UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALYSON LUUKKONEN, | )<br>) |
| Plaintiff, | )   Case No. 1:13-cv-1115<br>) |
| v. | )   Honorable Robert Holmes Bell<br>) |
| COMMISSIONER OF<br>SOCIAL SECURITY, | )<br>)<br>)   **REPORT AND RECOMMENDATION** |
| Defendant. | )<br>) |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On January 24, 2011, plaintiff filed her application for SSI benefits. She alleged a January 1, 2008, onset of disability.[1] (Page ID 138-43). Her claim was denied on initial review. On March 1, 2012, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (Page ID 47-68). On May 8, 2012, the ALJ issued his decision finding that plaintiff was not disabled. (Op., Page ID 35-42). On August 13, 2013, the Appeals Council denied review (Page ID 23-25), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, February 2011 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ committed reversible error by "failing to properly evaluate" the claimant's impairments as required by the Administration's own rulings.

2. The ALJ committed reversible error in failing to issue a subpoena to compel the testimony of Dr. Steven Geiger.

(Plf. Brief at 7, 11, docket # 1, Page ID 589, 593). I recommend that the Commissioner's decision be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after January 24, 2011, the application date. (Op. at 3, Page ID 37). Plaintiff had the following severe impairments: obesity, affective disorder, body dysmorphic disorder, and fibromyalgia. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 38). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of medium work:

> Claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c)[], except she can only do simple, routine, and repetitive tasks, with only occasional interaction with the public.

(Op. at 5, Page ID 39). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible:

> Claimant testified she is single and lives with her grandparents. She stated she is 5'7" and weighs 295 pounds. She testified that she lives off her grandparents because, she says, they know she cannot work. She said she graduated from high school and took classes at Lansing Community College. Claimant testified she has never worked. She said she once called an animal shelter about a job, but has never actually applied for a job. Claimant testified she cannot work because she has chronic fatigue, constant pain, and a fear of people. She said she has had constant pain since she was in high school. Claimant testified she sleeps 12 hours or more a day. She said she does not drive, but does have a driver's license. Claimant testified she has "migraines" four to five times a month, throws up, and "has to" lie down. She said she often has diarrhea, constipation, and stomach pain. She said she spends most of the day lying on the couch. Claimant testified she does not answer the telephone when someone calls because she can tell that the people on the other end of the telephone line think she is ugly just by talking to them.
>
> After careful consideration of the evidence, I find claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Claimant testified she cannot work, but has never even tried to work. She reported "pain" many times to medical sources, but this is not supported by any objective evidence. Claimant testified she has had pain and a fear of people since high school, but was able to graduate from high school and attend a year of college. Her medical sources consistently report her as pleasant and cooperative.
>
> On July 10, 2010, Dr. Beals candidly records that claimant "comes in today for a target visit for disability appointment." She continues, claimant "is here to discus disability since she does not feel that she can work and she has been denied disability twice. I will need to talk to her lawyer, Mr. Rouke, and see what [is] the best approach. I think that the psychiatric condition is the primary reason that she cannot work in the public and that psychiatric evaluation would be most appropriate" (Exhibit 15F). This note raises the serious and disturbing question of whether Dr. Beals is a treater or an advocate. Is she trying to improve claimant's alleged medical condition, or to improve her chances of getting paid?
>
> As for the opinion evidence, in April 2011, Dr. Geiger opined claimant could understand and follow simple instructions, and could perform simple routine tasks. This opinion is explained by Dr. Geiger's report and consistent with the record as a whole. Therefore, I give this opinion great weight. In addition, Dr. Geiger opined claimant would have significant difficulty handling work pressure and stress and would have difficulty effectively communicating with coworkers, customers, and supervisors (Exhibit 9F). This opinion is

>   not explained by Dr. Geiger's report or consistent with the record as a whole. Claimant was able to communicate effectively with Dr. Geiger, claimant's medical sources, the Agency Field Office employee, and the administrative law judge. Therefore, I give this opinion no weight.
>
>   In August 2011, Dr. Sigal gave claimant work preclusive limitations (Exhibit 13F). This opinion is not explained by his report, nor is it consistent with the record as a whole. Dr. Sigal reported claimant was alert, oriented x3, pleasant, and cooperative. He said claimant's thinking process was well organized and that she had no morbid preoccupations. Therefore, I reject this opinion.
>
>   In April 2011, Dr. Geiger noted claimant's gait and posture were normal, speech was understandable, clothing was neat and clean, and grooming and hygiene were good. Dr. Geiger said claimant had good contact with reality; and was pleasant, logical, and organized (Exhibit 9F). On May 26, 2011, Dr. Beals reported claimant had a normal physical examination, except for her alleged tender points. In July and September 2011, claimant refused to have her vitals taken at her physician's office (and her physician did not insist). On September 16, 2011, Dr. Miller said claimant had a normal physical examination except for pharyngitis (Exhibit 15F). Claimant has never worked, never gone to a job interview, and never even completed a job application. In short, there is little evidence that she has any motivation to work.

(Op. at 5-6, Page ID 39- 40). Plaintiff has no past relevant work. (*Id.* at 6, Page ID 40). Plaintiff was 24-years-old on the date she filed her application for SSI benefits, and 25-years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual. (*Id.* at 7, Page ID 41). Plaintiff has at least a high-school education and is able to communicate in English. (*Id.*). The transferability of job skills was not an issue because plaintiff had no past relevant work. (*Id.*). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 34,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (*Id.*; *see* Page ID 65). The ALJ found that this constituted a significant

-5-

number of jobs. Using Rule 203.28 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 7-8, Page ID 41-42).

**1.**

Plaintiff argues that the ALJ committed reversible error by "failing to properly evaluate" her impairments as required by the Administration's own rulings. (Plf. Brief at 7, Page ID 589). Specifically, she argues that (A) the ALJ failed to properly evaluate her fibromyalgia, (B) plaintiff's credibility was bolstered by a study which showed increased anxiety in individuals with polycystic ovary syndrome (PCO), and (C) the ALJ should have given more weight to a RFC questionnaire completed by Tatyana Sigal, M.D.[2] (*Id.* at 7-11, Page ID 589-93).

A.   Fibromyalgia

"[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankoski v. Commissioner*, 532 F. App'x 614, 619 (6th Cir. 2013). " 'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.' " *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012) (same).

Plaintiff argues that the ALJ committed error by not applying SSR 12-2p. (Plf. Brief at 7-8, Page ID 589-90). Plaintiff is incorrect. The ALJ issued his decision on May 8, 2012. (Op. at 8,

---

[2] The "conclusion" section of plaintiff's brief contains passing assertions that the ALJ was biased and improperly took administrative notice of "certain facts." (Plf. Brief at 14-15, Page ID 596-97). These issues are presented in a perfunctory manner and are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

Page ID 42). SSR 12-2p did not go into effect until July 25, 2012. *See Titles II and XVI: Evaluation of Fibromyalgia* (SSA July 25, 2012) (reprinted at 2012 WL 3104869, at * 1) ("Effective Date: July 25, 2012."). The ALJ did not commit error by failure to apply a social security ruling that did not go into effect until months after the ALJ entered his decision. *See Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007); *White v. Colvin*, No. 4:12-cv-11600, 2013 WL 5212629, at * 22 (E.D. Mich. Sept. 16, 2013).

Next, plaintiff argues that the "ALJ's dismissal of fibromyalgia solely on the basis that it 'necessarily' relies on subjective reports [was] error." (Plf. Brief at 8, Page ID). The ALJ did not dismiss the diagnosis of fibromyalgia. He found that plaintiff had the severe impairment of fibromyalgia based on the diagnosis provided by Carol Beals, M.D., a rheumatologist. (Op. at 3, Page ID 37). In *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs." 486 F.3d at 243. "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* at 244. Thus, "objective tests are of little relevance in determining the existence and severity of fibromyalgia. *Kalmbach v. Commissioner*, 409 F. App'x 852, 861 (6th Cir. 2011). "There are no objective tests which can conclusively confirm fibromyalgia. *Preston v. Commissioner*, 854 F.2d 815, 817-18 (6th Cir. 1988). "[S]ubjective pain complaints play an important role in the diagnosis and treatment of the condition." *Seeley v. Commissioner*, No. 14-5463, __ F. App'x __, 2015 WL 305322, at * 5 (6th Cir. Jan. 23, 2015). "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic

character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n. 2 (6th Cir. 2008). The ALJ's observations that an accurate diagnosis is largely dependent on plaintiff providing accurate responses regarding tender points presents nothing new. "[A] fibromyalgia diagnosis can be vexing because it cannot be confirmed by medical or laboratory testing and commonly turns on subjective reports of pain." *Hulst v. Aetna Life Ins. Co.*, 5:12-cv-344, 2014 WL 4594528, at * 11 (E.D. Ky. Sept. 15, 2014) (citation omitted); *see Maxwell v. Commissioner*, No. 3:12-cv-475, 2013 WL 4087558, at * 17 (D. Or. Aug. 12, 2013) ( "'trigger points' or other subjective criteria"); *Stone v. Astrue*, No. 11-5039, 2012 WL 3598423, at * 7 (W.D. Mo. Aug. 20, 2012) ("[T]rigger points were not objective findings because it depended upon the response, a subjective response of the patient, who says, yes it hurts in those areas.").

Plaintiff filed her application for SSI benefits on January 24, 2011.[3] A month earlier, plaintiff had received a physical examination at Sparrow Health System which returned normal results. (Page ID 492). On May 9, 2011, Dr. Beals conducted a consultative examination. (Page ID 566-69). Beals described plaintiff was a "delightful 25-year old female." (Page ID 566). Plaintiff indicated that her primary residence was in Grand Ledge, Michigan with her grandparents, but she occasionally stayed with her boyfriend in Cleveland, Ohio. Plaintiff stated that she had been diagnosed with fibromyalgia 4 or 5 years earlier. She had never seen a rheumatologist before this visit to Dr. Beals. (Page ID 567). Plaintiff stated that she was exercising on a stationary bike every

---

[3]Most of the records that plaintiff presented in support of this claim for SSI benefits predate the relevant time period which began on January 24, 2011, and ended on May 8, 2012, the date of the ALJ's decision. (*see* Page ID 201-490).

day, sometimes for hours. She also occasionally exercised on a treadmill. She "ha[d] not worked in any capacity in her life." (Page ID 567). She was alert, oriented, and appropriate in all manners. Plaintiff had no atrophy in her extremities. Dr. Beals stated that plaintiff had hypermobility in her joints. Beals found that plaintiff satisfied the criteria for fibromyalgia, possibly complicated by hypermobility syndrome. Beals stressed that this was an "investigational visit" and that plaintiff should return in a few weeks. (Page ID 569).

Plaintiff attended two subsequent sessions with Dr. Beals. On May 22, 2011, she returned to Beals to "discuss the findings from [the] initial visit." (Page ID 561). Beals stated that plaintiff had "tender points of fibromyalgia in 14/18 places." (Page ID 561). Plaintiff indicated that she would try to do stretching exercises and would try taking magnesium. (Page ID 561). On July 20, 2011, plaintiff returned for her last documented visit with Beals. (Page ID 558-60). This session was devoted to plaintiff's current claim for SSI benefits: "Patient comes in today for a target visit for disability appointment." (Page ID 558). "She is here to discuss disability since she does not feel that she can work and she has been denied disability twice." (Page ID 589). "I will need to talk to her lawyer, Mr. Rourke, and see what is the best approach, I think that the psychiatric condition is the primary reason that she cannot work in the public and that psychiatric evaluation would be most appropriate." (Page ID 589). Dr. Beals is a rheumatologist, not a psychologist or psychiatrist. She did not identify any specific functional restrictions stemming from plaintiff's fibromyalgia. Plaintiff has not shown any basis for disturbing the Commissioner's decision.

      B.     <u>Polycystic Ovary Syndrome (PCOS)</u>

"Polycystic ovary syndrome is a common hormonal disorder among women of reproductive age. The name of the condition comes from the appearance of the ovaries in most, but not all,

women with the disorder – enlarged and containing numerous small cysts located along the outer edge of each ovary (polycystic appearance)." *Sullivan v. Colvin*, No. 13-691, 2014 WL 4281158, at *1 n.1 (W.D. Mo. Sept. 1, 2014) (quoting http://www.mayoclinic.org/diseases-conditions/pcos/basics/definition/ con–20028841). Plaintiff was initially diagnosed with PCOS at age 14, but a second OB/GYN had been unable to validate that diagnosis. The diagnosis of PCOS was given again when plaintiff was age 19, but the physician noted that plaintiff "did not have all the classic symptoms." (Page ID 207). On October 18, 2007, a contrast enhanced CT of plaintiff's pelvis noted that plaintiff's ovaries "appear[ed] normal." (Page ID 275). On November 16, 2009, plaintiff reported to a Michigan physician that she was experiencing pelvic pain. Plaintiff thought that she might have an ovarian cyst. Plaintiff stated that she had an appointment "with a gynecology/endocrinologist in Virginia in the upcoming weeks." A CT scan on March 5, 2010, found evidence of follicular changes present in the ovaries bilaterally, but "no acute abnormality." (Page ID 490).

Plaintiff argues that her credibility is bolstered by a study which found a link between polycystic ovary syndrome and anxiety:

> Studies show there is increased anxiety in individuals with PCO[]s. Anxiety and Depression in Polycystic Ovary Syndrome: a Systematic Review and Meta-analysis J.A. Barryl, A.R. Kucmierczyk, and P.J. Hardiman.[4] (http://humrep.oxfordjournals.org/content/26/9/2442). The combined impact of a more severe level of anxiety should be contemplated in conjunction with the association of fibromyalgia and anxiety. This is evidence adding to the credibility of the claimant[']s honest perceptions.

---

[4]The 2011 study that plaintiff now emphasizes on appeal involved slightly more than 2000 women ("910 women with PCOs and 1347 controls"), and it concluded that the women with PCOS on average tend to experience "mildly elevated anxiety and depression[.]"

(Plf. Brief at 9, Page ID 591). There is no evidence before the court suggesting that the ALJ was presented with a copy of this study, nor any argument regarding the link now claimed. Further, even assuming that the evidence had been presented, it is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in her favor. Her burden on appeal is much higher. Plaintiff must demonstrate that the ALJ's factual finding regarding her credibility is not supported by substantial evidence.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her

subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Here, the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.  Further, it was appropriate for the ALJ to consider plaintiff's poor work history in making his factual finding regarding credibility.  *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998); *see also Robinson v. Commissioner*, No. 13-cv-13124, 2014 WL 4145339, at * 8 (E.D. Mich. Aug. 20, 2014); *Byers v. Commissioner*, No. 1:13-cv-339, 2014 WL 701597, at * 20 (W.D. Mich. Feb. 24, 2014); 20 C.F.R. § 416.929(c)(3).

  C. Tatyana Sigal, M.D.

Plaintiff argues that the ALJ failed to give appropriate weight to an RFC questionnaire completed by Dr. Sigal.  (Plf. Brief at 9-10, Page ID 591-92) (citing A.R. 511-15 (Page ID 544-48)). On August 11, 2011, plaintiff appeared at Dr. Sigal's office for an "Initial Psychiatric Evaluation."[5] (Page ID 546).  Plaintiff related that she "lives back and forth between her grandparents and her boyfriend[.]" She indicated that she was denied disability once and was seeking it again.  (*Id.*).  Dr. Sigal found that plaintiff was alert and oriented in all three spheres.  There were no signs of psychomotor agitation or retardation.  Plaintiff was pleasant and cooperative and maintained good eye contact.  Her mood was depressed, but stable.  Her speech was clear, coherent, and goal oriented.  Her tone was normal.  Her thinking process was well organized with no signs of psychosis.  Her attention, concentration, memory, insight and judgment were all "fair."  (Page ID 547).  Dr. Sigal offered a diagnosis of major depressive disorder, recurrent, moderate, rule out

---

[5]Dr. Sigal wrote that her former partner saw plaintiff back in 2005-2006.  (Page ID 546).

bipolar spectrum, and body dysmorphic disorder. (Page ID 547). On the same date as this consultative examination, Dr. Sigal completed a mental residual functional capacity questionnaire for plaintiff's attorney.[6] She marked boxes on this form indicating that plaintiff was "markedly limited" in almost all areas of functioning. (Page ID 544-45). The ALJ rejected the proffered RFC restrictions. He noted that none of the proposed restrictions were supported by an explanation and that the extreme restrictions suggested were not supported by the record as a whole. Sigal had noted that plaintiff was alert, oriented in all three spheres, pleasant and cooperative. Her thinking process was well organized and she had no morbid preoccupations. RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). The ALJ found that plaintiff retained the RFC for "simple, routine and repetitive tasks, with only occasional interaction with the public." (Op. at 5, Page ID 39). The ALJ's factual finding in this regard is supported by more than substantial evidence. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). I find that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

**2.**

---

[6]Sigal met with plaintiff on two occasions in the months *after* completing the RFC questionnaire. On September 15, 2011, she reviewed plaintiff's medications (Page ID 550-51), and November 22, 2011, she recommended that plaintiff see a dermatologist and that she start taking Celexa (Page ID 549-50). Whether Sigal was a consultative examiner or a treating psychologist is determined as of the date the opinion is rendered. *Kornecky v. Commissioner*, 167 F. App'x 496, 507 n.10 (6th Cir.2006). Dr. Sigal was not a treating physician when she gave her opinions regarding plaintiff's RFC. It is well established that a one-time examination is not sufficient to establish a treating physician relationship. *Id.* at 506-07.

Plaintiff argues that the ALJ committed reversible error in failing to subpoena Dr. Steven Geiger. (Plf. Brief at 11-13, Page ID 593-95). On April 27, 2011, plaintiff had received a consultative psychological examination performed by Psychologist Geiger. (Page ID 502-06). Plaintiff related that she had seen a psychiatrist years earlier, but stopped going in 2006, "because [plaintiff] didn't feel like it was beneficial." (Page ID 503). Plaintiff indicated that she met her boyfriend at a concert and that they had been together for 3 years. (Page ID 503). Plaintiff graduated from high school. (Page ID 503). Plaintiff reported that she had social contact with her family and her boyfriend. Her boyfriend "lives in Cleveland" and at time she would stay with him. (Page ID 504). Plaintiff indicated that she uses a computer, searches topics and reads on the Internet and communicates through e-mail. (Page ID 504). Plaintiff reported that she compulsively picks at the skin on her face and neck. (Page ID 503). Psychologist Geiger found that plaintiff was in good contact with reality. Her speed of motor activity was normal. She was pleasant, logical and organized. She was oriented in all three spheres. She was cooperative, verbal, friendly and engaged in the assessment process. Her clothing was neat and clean and her grooming and hygiene were good. (Page ID 504). Psychologist Geiger offered a diagnosis of body dysmorphic disorder, major depressive disorder, recurrent, severe without psychotic features, and impulse control disorder NOS (dermatillomania) picking and biting skin on hands). (Page ID 505-06). He offered his opinion that plaintiff was capable of performing simple, routine tasks and following simple instructions. (Page ID 505). He thought that plaintiff would have considerable difficulty interacting with coworkers, customers, and supervisors. (*Id.*).

"When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a

party, issue subpoenas for the appearance and testimony of witness[] . . . material to an issue at the hearing."   20 C.F.R. § 416.1450(d)(1).   A party may file a written request asking the ALJ to subpoena a witness:

> (2) Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date.  The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 416.1450(d)(2).

On July 18, 2011, the Office of Disability Adjudication and Review sent plaintiff and her attorney a copy of Form HA-L2 (06-11) which is a form letter outlining the administrative hearing process.  (Page ID 95-96).  The name of the chief administrative judge appears on the form letter, but it is not signed.  (Page ID 96).  There is no evidence indicating that plaintiff's claim was ever assigned to "Chief Administrative Law Judge Thomas L. Walters."  (*Id.*).  Enclosed with the form letter was a copy of Form HA-L4 ("What Happens Next").  This document advised plaintiff and her attorney that this file was now at the Office of Adjudication and Review (ODAR) and that it would eventually be forwarded to an ALJ after ODAR finished preparing the file.  (Page ID 99).

On July 20, 2011, plaintiff directed a letter to "The Honorable Thomas L. Walters" asking him to issue a subpoena to Psychologist Geiger.  (Page ID 187-89).  Plaintiff stated in cryptic fashion that Psychologist Geiger's report identified "specific psychiatric diagnoses of significance which may cause serious limitations" and stated that his testimony was relevant to plaintiff's residual functional capacity.  (Page ID 187-88).  Alternatively, plaintiff's attorney asked ALJ Walters to direct Geiger to answer three interrogatories.  (Page ID 189).  The interrogatories did not

seek any information regarding Geiger's "diagnoses," but sought to have him provide opinions regarding plaintiff's RFC. (*Id.*).

On February 1, 2012, the Social Security Administration notified plaintiff and her attorney that the administrative hearing was scheduled for March 1, 2012. (Page ID 103). Plaintiff's attorney never renewed the request for a subpoena after receiving notice that an ALJ had been assigned to this case and a firm hearing date had been set. Plaintiff's attorney never directed a request for a subpoena to the presiding ALJ in this case, Paul W. Jones.[7] Before ALJ Jones asked plaintiff any questions at the hearing, he inquired whether plaintiff's attorney had "anything else in writing" for his consideration. Counsel replied, "I don't believe so Your Honor." (Page ID 50). The hearing transcript reveals that plaintiff's attorney never mentioned the request for a subpoena that he had directed to the attention of a different ALJ more than six months earlier. Plaintiff waived any objection that she may have had to the lack of a ruling on the request for a subpoena when she failed to bring the matter to the presiding ALJ's attention.

"[A] social security claimant does not have an absolute right to subpoena a physician . . . , but rather the administrative law judge has the discretion to issue a subpoena 'where necessary for the full presentation of the case.'" *Flatford v. Chater*, 93 F.3d 1296, 1300-01 (6th Cir. 1996); *see also Passmore v. Astrue*, 433 F.3d 658, 665-66 (6th Cir. 2008); *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005); *Hull-Kitchen v. Astrue*, No. 3:11-cv-423, 2013 WL 423278, at * 12 (S.D. Ohio Feb. 1, 2013) ("[T]he ALJ's failure to respond to [a] subpoena request does not constitute an

---

[7]I am aware that plaintiff's claim was processed during a period when the Administration declined to disclose the presiding ALJ's identity before the hearing date. The Administration changed its policy in April 2013. *See* 3 Current Soc. Sec. News, *Secret ALJ Policy Ends* (July 2013).

abuse of discretion or reversible error."); *Bronzene v. Astrue*, 1:10-cv-967, 2012 WL 602142, at * 7 (N.D.N.Y. Feb. 23 2012) ("The plain language of this section clearly places the decision to issue a subpoena within the sound discretion of the ALJ."). I find no abuse of discretion because there is no evidence that plaintiff's attorney ever presented the request for a subpoena to ALJ Jones or brought the matter to the ALJ's attention at any time before the date the ALJ rendered his decision in this matter.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   February 9, 2015            /s/  Phillip J. Green
                                     United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).